IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DENNIS FLORER, #A6070275, | ) | CIV. NO. 15-00308 DKW/RLP |
| | ) | |
| Plaintiff, | ) | SCREENING AND SERVICE |
| | ) | ORDER |
| vs. | ) | |
| | ) | |
| MICHEAL HOFFMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**SCREENING AND SERVICE ORDER**

Before the court is pro se Plaintiff Dennis Florer's prisoner civil rights

complaint.  Compl., Doc. No. 1.  Plaintiff is a pretrial detainee incarcerated at the

Oahu Community Correctional Center ("OCCC")[1], and is proceeding in forma

pauperis.  Doc. No. 4.  Plaintiff names OCCC Warden Michael J. Hoffman;[2] Case

Manager ("CM") Andria Barayuga; Unit Team Manager ("UTM") Kana

Harrington; Chief of Security ("COS") Denise Johnston; Sgt. L. Visitacion; Adult

---

[1] *See* http://hoohiki1.courts.state.hi.us/jud/Hoohiki/main.htm (*State v. Florer*, 1PC14-1-000229) (last visited Sept. 23, 2015).

[2] The court corrects the spelling of Warden Hoffman's name from "Micheal" to "Michael."

Corrections Officer ("ACO") Polloko; and John Does 1 to 5 (collectively, "Defendants"), in their official and individual capacities.

Plaintiff alleges ACO Polloko violated his rights under the Eighth Amendment by (1) using excessive force against him; (2) failing to protect him from assault by gang members; and (3) delaying calling for medical care. Plaintiff alleges the remaining Defendants violated the Eighth Amendment by failing to provide him a single-inmate protective custody cell after the assault.

Plaintiff's Complaint is DISMISSED IN PART pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Because Plaintiff states a claim against Defendant ACO Polloko, service of the Complaint on ACO Polloko is appropriate. After service is perfected, Defendant ACO Polloko is directed to file an answer or other responsive pleading. *See* 42 U.S.C. § 1997e(g)(2).

## I. <u>BACKGROUND</u>

Plaintiff states that the Honolulu Star Advertiser identified him as a child molester in mid-June 2015. Plaintiff alleges that Module 18 gang members thereafter began soliciting other inmates to assault him. On July 17, 2015, OCCC officials transferred Plaintiff from Module 18 to the "Mauka" unit in response to this perceived threat. *See* Compl., Doc. No. 1, PageID #6. Plaintiff alleges that three days after his transfer to the Mauka unit, on July 20, 2015, ACO Polloko

accosted him at his bunk, called him a punk, slapped his face, stood aside while several gang members attacked him, then delayed calling for medical assistance. *Id.*, PageID #7.  ACO Polloko did call OCCC medical staff, however, and Plaintiff was taken to The Queens Medical Center ("QMC"), where a CT scan was performed, allegedly revealing a fractured facial bone, severe facial swelling, lumps, and cuts inside and outside of his mouth.  Plaintiff states his "back ribs have been in extreme pain fractured or broke."  *Id.*  Plaintiff returned to OCCC the same day and was housed in Module 2 of the Medical Unit.

Plaintiff filed this action on August 7, 2015.[3]  Plaintiff says he asked Defendant Sgt. Visitacion for protective custody on July 23, 2015.  He clarifies that this request for protective custody means "complete isolation from I/Ms [inmates]," in other words, a single-inmate protective custody cell.[4]  *Id.*, PageID #11.  Visitacion allegedly told him that OCCC had no such protective custody unit, and suggested that he speak with CM Barayuga.  *Id.*, PageID #8.  Plaintiff wrote Barayuga the next day and copied this letter to Warden Hoffman.  Barayuga

---

[3] Plaintiff was later transferred to the Hawaii State Hospital, and was recently rehoused at OCCC.  *See Florer v. Hoffman*, Civ. No. 15-00225 DKW. It is unclear where Plaintiff is now housed within OCCC.

[4] Plaintiff states that OCCC's Holding Unit cannot be considered "protective custody" because it houses two inmates per cell and its cell doors are all opened for showers and recreation at the same time.

allegedly responded that OCCC had no protective custody unit and distributed his written request for protective custody to Visitacion and UTM Harrington.

Plaintiff seeks a solitary, single-inmate protective custody cell where he will be completely isolated from other inmates, an order requiring OCCC to establish such solitary protective custody cells for all inmates who qualify, and compensatory and punitive damages.

## II. SCREENING STANDARDS

The court must screen all civil actions brought by prisoners proceeding in forma pauperis or seeking redress from a government entity, officer, or employee. 28 U.S.C. §§ 1915(e)(2) & 1915A(a).  Complaints or claims that are frivolous, malicious, fail to state a claim, or that seek relief from a defendant who is immune from such relief must be dismissed.  28 U.S.C. §§ 1915(e)(2) & 1915A(b); 42 U.S.C. § 1997e (c)(1).

A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully -harmed-me

accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plausible claim states facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When screening a complaint, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 679-80. The court must then consider the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681.  If the allegations state a plausible claim for relief, the claim may proceed.  *Id.* at 680.

Plausibility "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  A court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The court is not, however, required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'"

*Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (*per curiam*) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  "[C]onclusory allegations of law and unwarranted inferences are insufficient." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

Leave to amend should be granted if it appears the plaintiff can correct the defects in the complaint.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).  If a complaint cannot be saved by amendment, however, dismissal without leave to amend is appropriate.  *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## III.  DISCUSSION

To state a civil rights claim under 42 U.S.C. § 1983, a plaintiff "must allege a violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### A.  Immunities

Defendants named in their official capacities are not persons subject to suit under § 1983.  *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007).  The only exception is "for prospective declaratory and injunctive relief against state officers, sued in their

official capacities, to enjoin an alleged ongoing violation of federal law." *Young v. Hawaii*, 911 F. Supp. 2d 972, 983 (D. Haw. 2012) (quoting *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000)); *see Ex parte Young*, 209 U.S. 123 (1908).

Plaintiff's claims for damages against Defendants named in their official capacities are DISMISSED with prejudice.

**B.      Cruel and Unusual Punishment**

Because Plaintiff is a pretrial detainee, his protection from cruel and unusual punishment must be addressed under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment, as he alleges in the Complaint. *See Kingsley v. Hendrickson*, ─── U.S. ───, 135 S. Ct. 2466, 2473 (2015) (evaluating pretrial detainee's excessive force claim under the Fourteenth Amendment); *Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1241-42 (9th Cir. 2010) (discussing appropriate constitutional provisions to assess pretrial detainees' Eighth Amendment claims); *see also Castro v. Cty. of L.A.*, --- F.3d ---, 2015 WL 4731366, at *4-5 (9th Cir. Aug. 11, 2015) (citing *Clouthier*, and explaining that *Kingsley* did not alter the deliberate indifference subjective analysis, except as it is applied to excessive force claims made by pretrial detainees).

## C.     Defendant ACO Polloko

Plaintiff claims that ACO Polloko slapped him without provocation, watched while other inmates assaulted him without intervening, and initially delayed calling for medical care.

### 1.     *Excessive Force*

A pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable to demonstrate that such force was excessive under the Fourteenth Amendment's Due Process Clause.  *Kingsley*, 135 S. Ct. at 2472-73 (clarifying that the deliberate indifference subjective standard does not apply to excessive force claims).  "The objective component of an [excessive force] claim is . . . contextual and responsive to contemporary standards of decency."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (considering excessive force under the Eighth Amendment as applied to convicted prisoners) (citations omitted).  "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  *Id.* at 9 (citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986); *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (holding the excessive force standard examines de minimis uses of force, not de minimis injuries).

Plaintiff states a claim against ACO Polloko for excessive force, particularly in light of Polloko's other alleged actions and inactions during the altercation. This claim is permitted to proceed.

### 2. *Failure to Prevent Harm*

Prison officials have a duty to protect inmates from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833  (1994); *Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015).  They must "take reasonable measures to guarantee" inmates' safety. *Farmer*, 511 U.S. at 832 (1994) (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

A constitutional violation based on a prison official's failure to prevent harm has two requirements. *Id.* at 834.  Objectively, "the prison official's act or omission must cause 'a substantial risk of serious harm.'" *Cortez*, 776 F.3d at 1050 (quoting *Farmer*, 511 U.S. at 834).  Subjectively, the official must be aware of that risk and nonetheless disregard the risk with "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 837.  That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* The test for deliberate indifference is the same as that for criminal recklessness, i.e., the official must actually know of and disregard an excessive risk to inmate safety. *Id.* at 836-

37.  "Deliberate indifference may be established through an 'inference from circumstantial evidence' or 'from the very fact that the risk was obvious.'"  *Cortez*, 776 F.3d at 1050 (quoting *Farmer*, 511 U.S. at 842.   Neither negligence nor gross negligence constitutes deliberate indifference.  *Farmer*, 511 U.S. at 835-36 & n.4; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Plaintiff states a failure-to-protect claim against ACO Polloko, and this claim is also permitted to proceed.

### 3.   *Delay of Medical Care*

Plaintiff alleges ACO Polloko told him to wait until the next day for medical care, but then called the medical unit for assistance.  Plaintiff was taken to QMC, treated, and returned to OCCC custody the same day.  To state a claim for delay of medical care, a plaintiff must show both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference."  *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  Deliberate indifference can be "manifested by . . . prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

Although lacking detail regarding how long the delay was before ACO Palloko called the medical unit, and whether that delay caused further injury, the court accepts that Plaintiff may have endured additional pain due to ACO

Polloko's alleged delay in calling for medical personnel.  This claim sufficiently states a claim and is permitted to proceed.

### D.   Claims Against Sgt. Visitacion, CM Barayuga, UTM Harrington, COS Johnston, and Warden Hoffman

Plaintiff claims that Visitacion and Barayuga informed him there were no single-inmate protective custody cells at OCCC.  He alleges that Harrington, Johnston, and Hoffman were made aware of his request for such a cell, and suggests they did nothing.  Thus, he alleges they each violated the Eighth Amendment.

#### 1.   *Official Capacity Claims For Injunctive Relief*

To the extent that Plaintiff alleges that Visitacion, Barayuga, Harrington, Johnston, or Hoffman are liable for injunctive relief in their official capacities for an alleged institutional failure to provide single-inmate protective custody cells at OCCC, this claim fails.  The Department of Public Safety ("DPS") and OCCC have a non-punitive protective custody policy for inmates who request or require separation from other inmates for their protection.  *See* DPS Policy No. Cor. 11.03 (eff. 12/22/09).  This policy requires that such inmates be separated from the general population "for their physical safety and well-being [and are] afforded separate and secure housing."  *Id.*, Cor.11.3.1.

Plaintiff alleges that unidentified OCCC officials transferred him from Module 18 to Mauka for his protection, in response to perceived threats from gang members.  When Plaintiff returned to OCCC, prison officials housed him in Module 2 of the medical unit.  These facts suggest that they acted in response to a perceived threat to his safety and in response to the assault.  They acted in full compliance with Cor. 11.3 to provide Plaintiff a more protective level of supervision and direct medical care for his injuries.  These facts do not suggest they violated OCCC policies for protecting him from harm.

To be clear, Plaintiff does not allege that Visitacion, Barayuga, Harrington, Johnston, or Hoffman actually denied him protection.  Rather, he alleges that OCCC must provide him and other similarly situated inmates a higher level of protection -- solitary confinement protective custody.  Plaintiff is mistaken.  OCCC is only required to provide secure and safe housing for a  protective custody inmate.  That is, while inmates have a right to be protected from harm, they do not have a right to be housed in a particular cell, unit, prison, or even state.  *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) ("Just as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State."); *Montayne v. Haymes*, 427 U.S. 236, 242-43 (1978) (holding inmate has no

12

constitutional right to be housed in a particular state prison); *Meachum v. Fano*, 427 U.S. 215, 224 (1976) (holding that no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison).  The court is unaware of any case law holding that a prison must provide a certain type of protective custody cell to insure an inmate's safety, but only must take objectively reasonable steps to protect an inmate from harm.

This court will not interfere in OCCC housing and classification decisions as Plaintiff demands, or require the DPS to provide single-inmate protective custody cells in its prisons based on Plaintiff's subjective fears.  *See Bell v. Wolfish*, 441 U.S. 520, 562 (1979) (admonishing federal courts to avoid "becom[ing] increasingly enmeshed in the minutiae of prison operations"); *Wright v. Rushen*, 642 F.2d 1129, 1132 (9th Cir.1981) (denying injunctive relief beyond what is necessary to correct conditions that violate the Eighth Amendment); *Wylie v. Montana Women's Prison*, 2014 WL 6685983, at *3 (D. Mont. Nov. 25, 2014) (denying preliminary injunction and declining to "interfere with day-to-day prison administrative decisions").  Plaintiff's official capacity claims for specific injunctive relief providing single-inmate protective custody cells fail to state a claim and are DISMISSED without prejudice.

### 2. *Individual Capacity Claims*

Plaintiff alleges that Visitacion, Barayuga, Harrington, Johnston, and Hoffman violated his rights in their individual capacities by denying him a solitary protective custody cell. Plaintiff alleges that the Holding Unit[5] is not secure because inmates there are double-celled and released for showers and recreation at the same time.

Although an inmate need not have actually suffered harm to obtain relief from unsafe conditions, *see Contreras v. Collins*, 50 F. App'x 351, 352 (9th Cir. 2002), an inmate's purely speculative fears of attacks from other inmates do not meet the objective prong set forth in *Farmer*. *See* 511 U.S. at 845. Plaintiff articulates nothing substantiating his subjective fear of another attack, such as new and credible threats he has received, acts of violence between other inmates or against him in Module 2, or even an inability to get along with his cell mate and consequent fear that the Module 2 assignment poses a danger to him. As such, this claim is vague, conclusory, and implausible.

Moreover, while prison officials must protect inmates from violence and take reasonable measures to protect their safety, *Farmer*, 511 U.S. at 833; *Cortez*,

---

[5] It is unclear whether Plaintiff's Module 2 cell is considered a Holding Unit cell, or that he is arguing that a transfer to the Holding Unit would not satisfy him.

14

776 F.3d at 1050, § 1983 requires an actual connection or link between the actions of the defendants and the deprivation allegedly suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978) ("Congress did not intend § 1983 liability to attach where . . . causation [is] absent."); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976) (holding that § 1983 requires an affirmative link between the misconduct alleged and the adoption of a plan or policy by supervisors that authorized or approved such misconduct). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff alleges no facts showing that Visitacion, Barayuga, Harrington, Johnston, or Hoffman were personally involved in the July 20, 2015 assault, or that they were otherwise deliberately indifferent to his safety. He only claims that they told him that OCCC does not have solitary inmate protective custody cells. This is insufficient to state a claim that Visitacion, Barayuga, Harrington, Johnston, or Hoffman acted with deliberate indifference to his safety when they told him that OCCC has no solitary protective custody cells, or failed to provide him such a cell, and is DISMISSED without prejudice.

### E.    John Does 1-5

As a practical matter, it is impossible in most instances for the United States

Marshal to serve a summons and complaint on an anonymous defendant.

Therefore, the use of Doe Defendants is generally disfavored in federal court.  *See*

*Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

If the names of individual defendants are unknown when a complaint is

filed, however, a plaintiff may refer to the unknown defendants as Defendant John

Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts to

support how each particular Doe Defendant violated his constitutional rights.  A

plaintiff may then use the discovery process to obtain the names of any Doe

Defendants he believes violated his constitutional rights and thereafter seek leave

to amend to name those defendants, unless it is clear that discovery would not

uncover the identities, or that the complaint would be dismissed on other grounds.

*Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629

F.2d at 642 (9th Cir. 1980)).

Plaintiff sues John Does 1-5 without differentiation as to how any

unidentified individual violated his constitutional or statutory rights.  That is,

Plaintiff provides no identifying facts against any John Doe that suggests they were

involved in the July 20, 2015 assault or otherwise failed to protect him.   Plaintiff

fails to state a claim against Defendants John Does 1-5.

Plaintiff's claims against Defendants John Does 1-5 are DISMISSED

without prejudice.  He may reallege claims against Doe Defendants, but to

successfully do so, he must allege specific facts showing what each particular Doe

Defendant did to violate his rights.

### IV.  <u>LEAVE TO AMEND</u>

Plaintiff may move to file an amended complaint to reallege claims or

defendants who are dismissed without prejudice, consistent with this Order.  That

is, the amended complaint must cure the deficiencies noted above.  An amended

complaint generally supersedes the original complaint. See *Loux v. Rhay*, 375 F.2d

55, 57 (9th Cir. 1967), *overruled in part by Lacey v. Maricopa Cty*., 693 F.3d 896

(9th Cir. 2012) (en banc)).  Defendants not named in the caption and claims

dismissed without prejudice that are not realleged in an amended complaint may be

deemed voluntarily dismissed.  *See Lacey*, 693 F.3d at 928 ("[C]laims dismissed

with prejudice [need not] be repled in a[n] amended complaint to preserve them for

appeal . . . [but] claims [that are] voluntarily dismissed [are] . . . waived if not

repled.").  In an amended complaint, each claim and the involvement of each

Defendant must be sufficiently alleged.  Plaintiff is NOTIFIED that he must

comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii if he chooses to amend his pleading.

## V.  CONCLUSION

IT IS HEREBY ORDERED that:

(1)    Plaintiff's claims against Defendant ACO Polloko in his individual capacity state a claim.  ACO Polloko shall be served as directed below.

(2)    Plaintiff's official capacity claims against all Defendants for damages, and those seeking single-inmate protective custody cells at OCCC, are DISMISSED WITH PREJUDICE.

(3)    Plaintiff's individual capacity claims against Warden Hoffman, Andria Barayug, Kana Harrington, Denise Johnston, Sgt. L. Visitacion, and John Does 1-5 are DISMISSED without prejudice.

## VI.  SERVICE ORDER

The U.S. Marshal is ORDERED to serve the Complaint, Doc. No. 1, and summons on Defendant ACO Polloko.  *See* Fed. R. Civ. P. 4(c)(3).  Plaintiff is DIRECTED to effect service on Polloko by mailing a copy of the Complaint and the fully completed service documents to the U.S. Marshal, as set forth below.  If ACO Polloko accepts waiver of service of the summons, he SHALL return the completed waiver of service documents to the U.S. Marshal, who will file the

waiver with the court.  After service is perfected, Polloko is ORDERED to file an Answer or other responsive pleading to the amended Complaint within the time allowed under Fed. R. Civ. P. 4(d)(3) and 12(a)(1)(A).

IT IS HEREBY ORDERED that:

(1)     Service of the Complaint is appropriate for Defendant ACO Polloko. The Clerk shall send Plaintiff a copy of the endorsed Complaint, if he has not already received one, a completed summons, one USM-285 form, one Notice of Lawsuit and Request for Waiver of Service for Summons form (AO 398), two (2) Waiver of Service of Summons forms (AO 399), and an instruction sheet.  The Clerk shall send a copy of this order to the U.S. Marshal.

Plaintiff shall complete the forms as directed and submit these documents to the U.S. Marshal in Honolulu, Hawaii.  *See* Fed. R. Civ. P. 4(i).  Because Defendant ACO Polloko is alleged to be a Hawaii Department of Public Safety ("DPS") employee, Plaintiff should complete the service documents naming Polloko, but should address them to Shelley Nobriga, DPS Litigation Coordinator, 919 Ala Moana Blvd., 4th Floor Honolulu, HI 96814, and send these documents to the U.S. Marshal to perfect service.  Ms. Nobriga is authorized to accept one complaint and the waiver of service forms for DPS defendants.

(2)  Upon receipt of these documents, the U.S. Marshal shall mail a copy of the Complaint, the completed Notice of Lawsuit and Request for Waiver of Service forms (AO 398), and two completed Waiver of Service of Summons forms (AO 399) (two for each defendant), as directed by Plaintiff pursuant to Fed. R. Civ. P. 4 without payment of costs.

(3)  The U.S. Marshal shall retain the sealed summons and a copy of the Complaint.  Defendant ACO Polloko shall return the Waiver of Service forms to the U.S. Marshal not more than thirty days from the date the requests for waiver are mailed.  If the Waiver of Service of Summons forms and requests for waiver of service are returned as undeliverable, the U.S. Marshal shall immediately file them with the court.

(4)  If Defendant ACO Polloko does not timely return the Waiver of Service of Summons forms within thirty days of mailing, the U.S. Marshal shall:

a.  Personally serve ACO Polloko with the above-described documents pursuant to Fed. R. Civ. P. 4 and 28 U.S.C. § 566(c) and shall command all necessary assistance from the Department of Public Safety to execute this Order.

b.  Within ten days after personal service is effected, the U.S. Marshal shall file the return of service for Defendant ACO Polloko, along with

20

evidence of any attempts to secure a waiver of service of summons and of

the costs subsequently incurred in effecting service on said defendant.  Said

costs shall be enumerated on the USM-285 form and shall include the costs

incurred by the U.S. Marshal's office for photocopying additional copies of

the summons and Complaint and for preparing new USM-285 forms, if

required.  Costs of service will be taxed against the personally served

Defendant in accordance with the provisions of Fed. R. Civ. P. 4(d)(2).

(5)     Defendant ACO Polloko shall file an answer or other responsive

pleading to Plaintiff's Complaint within sixty [60] days after the request for waiver

of service was sent (if formal service is waived), or twenty [20] days after personal

service.  Failure to do so may result in the entry of default judgment.

(6)     Plaintiff shall inform the court of any change of address by filing a

"NOTICE OF CHANGE OF ADDRESS."  The notice shall contain only

information about the change of address and its effective date and shall not include

requests for other relief.  Failure to file such notice may result in the dismissal of

the action for failure to prosecute under Fed. R. Civ. P. 41(b).

(7)     After the Complaint is served, Plaintiff's documents are deemed

served on Defendant or his attorney(s) when they are electronically filed by the

court.  The U.S. Marshal is not responsible for serving these documents on Plaintiff's behalf.

(8)  Until the Complaint is served and Defendant or his attorney files a notice of appearance, Plaintiff SHALL NOT FILE MOTIONS OR OTHER DOCUMENTS with the court.

IT IS SO ORDERED.

DATED: September 29, 2015 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

--------------------------------------------------------------------------------------------------
*Florer v. Hoffman*, Civ. No. 15-00308 DKW/RLP;   SCREENING AND SERVICE ORDER;
scrng 2015 Florer 15-308 (scrn serve 8th p.c.).